GEORGE L. CRAMER, FREDERICK W. CRAMER AND
WILLIAM L. CRAMER, PARTNERS, TRADING AS
GEORGE L. CRAMER & SONS, AND JOHN D.
CONRAD, JR., SHERIFF OF FREDERICK
COUNTY, MARYLAND,

*vs.*

WILLIAM C. RODERICK AND MINNIE RODERICK,
HIS WIFE.

*Unrecorded deeds: effect of—; when good as contracts to con-
vey; Code, Article 21, sections 19 and 21. Vendor's in-
terest: when not liable to seizure under execution.*

Under the statutes relating to conveyances not recorded with-
in the time fixed by law—Code, Article 21, sections 19 and
21—such a conveyance is not made inoperative as to creditors,
but is to be given validity and effect only as a contract for the
conveyance of land.                                        p. 429

Upon the execution of a contract of sale of property in fee
simple, the whole equitable estate passes out of the vendor to
the vendee on the date of the deed to him; the vendor retains
the bare legal title, and that only until the deed is recorded.
                                                            p. 427

Such an interest can not be seized and sold under execution
by a judgment debtor of the vendor, who became such after the
execution of the contract, even though it be before the record-
ing of the deed.                                           p. 427

*Decided per curiam January 28th, 1916.*

Appeal from the Circuit Court for Frederick County. In Equity. (URNER, C. J., WORTHINGTON and PETER, JJ.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON and CONSTABLE, JJ.

*Leo Weinberg* (with whom was *Frank L. Stoner* on the brief), for the appellants.

A brief in favor of the appellees was submitted by *Reno S. Harp, Milton G. Urner* and *Milton G. Urner, Jr.*

CONSTABLE, J., delivered the opinion of the Court.

This appeal involves the interpretation of some of the Registry Acts.

The main facts are undisputed. The appellees as the owners of a lot of land, with improvements thereon, in the City of Frederick, filed a bill seeking to restrain the appellants from proceeding further to execute a writ of *fieri facias* against their said property, for the purpose of collecting a judgment recovered by the appellants, George L. Cramer, Frederick W. Cramer and William L. Cramer, trading as George L. Cramer & Sons, against one Samuel L. Lilly. The judgment was obtained on February 15th, 1913, upon a judgment note given by the said Lilly for the balance of $365.00 on loans of money beginning July 14th, 1911. At the time of the original loan, Lilly was assessed, on the assessment books of Frederick County, with two lots of land in Frederick City; one a lot with improvements at $3,430.00, the other, unimproved, at $100.00. This latter lot was conveyed by Lilly and wife to Milton F. Cutsail and wife on the 7th day of May, 1910, and by Cutsail and wife to the appellees on the 30th day of November, 1912. By inad-

vertence, but admittedly without any fraudulent intent, neither of the deeds was recorded until the 25th day of September, 1913; in each case more than six months after their date, and subsequently to the obtention of the said judgment. The appellees, in August, 1913, began the erection of dwelling houses on their vacant lot, and completed the same at a cost of $3,500.00 in March, 1914. The appellants never learned that Lilly had sold the lots until after the deeds were recorded in September, 1913. On the 19th day of June, 1914, the writ of *fi. fa.* was issued on said judgment, and the sheriff levied upon all the right, title, claim, interest and estate, both at law and in equity of the said Samuel L. Lilly, in and to the said lot and advertised the said real estate for sale.

After a hearing the Court held that the judgment was no lien upon the lot in question, and made permanent the preliminary injunction previously granted.

The question involved is, what is the effect of a deed of conveyance recorded more than six months after its date, as against creditors who become such between the date of the deed and the date of its recording, without notice of such deed.

The contention of the appellants is, that since the deed from Lilly and wife was not recorded until after six months from its date, and they had become creditors of Lilly between the date of the deed and its recording, without notice, the deed as to them was null and void.

Whatever the rights of the appellants may be, they are statutory, and, therefore, we will examine the statutory law of recording, and its effect as relating to this question.

By Chapter 14, section 2 of the Acts of 1766, all deeds of conveyance were required to be recorded within six months from their date. Code, Art. 21, sec. 13. Before 1785, Courts of Chancery had power, by virtue of their general equitable jurisdiction, to compel the execution of defectively executed contracts, but by the Act of 1785, Chapter 72, it

was provided by section 11, that where any deed had not been recorded agreeably to law, without any fraudulent intent or design upon the part of the party claiming under such deed the Chancellor should have power, after due process, to order that such deed should be recorded; and such deed .was to have the same effect and consequences as if it had been recorded within the time fixed by law; provided, among other things, that such deed, so recorded, should not affect the creditors of the party making it, who might trust such party after the date of the deed. Code, Art. 16, sec. 34.

By the Act of 1831, Chapter 304, the necessity of applying to the Courts to authorize the recording of deeds after the expiration of the time fixed by law, was removed from all deeds, except those conveyances by way of mortgage, and they remained, to the present time, subject to the provisions of Article 16, section 34. Code, Art. 21, sec. 19. And by the same Act, in addition to allowing deeds, except deeds by way of mortgage, to be recorded by the mere wish of the grantee after the expiration of six months after their date, it was attempted to fix the status of such recorded deeds as to creditors of the grantors before the recording and without notice. That part of the Act is now codified as Code, Art. 21, sec. 21, and is as follows: "But as against all creditors who have become so before the recording of such deed or conveyance, and without notice of the existence thereof, such deed or conveyance shall have validity and effect only as a contract for the conveyance or assurance of the estate, interest or use, purported by such deed or conveyance to be conveyed or assured."

This language is quite different from that dealing with the same situation in the earlier Act, by which the permission of the Court had to be first obtained for late recording and which now, of course, is only resorted to in the case of deeds by way of mortgage where there has been neglect to record in time.

In the case of deeds of mortgage recorded under the provision of Article 16, section 34, the deeds are inoperative as

against creditors of the grantors, who have become such between the date of the deed and its recording, because the statute by plain and unequivocal language has made it so. But as against creditors of the grantors in deeds not by way of mortgage, the Act, in allowing them to be recorded at the will of the grantee, has gone further, and, by new language has changed the effect such recording shall have, by using language, the legal effect of which is recognized universally.

What is the meaning of the words "such deed or conveyance shall have validity and effect only as a contract for the conveyance or assurance of the estate, interest or use, purported by such deed or conveyance to be conveyed or assured"?

In the deed from Lilly and wife of May 7th, 1910, they purported to convey a fee simple estate to Cutsail and wife. By the statute as against creditors the conveyance is not made inoperative but it is expressly provided that it shall have validity and effect only as a contract for the conveyance of the estate purported to be conveyed. If then the deed has not been recorded with the time fixed, it must be treated as a contract to convey. But it has repeatedly been held, that by entering into a contract of sale of property, the equitable title immediately passes from the vendor to the vendee and leaves the vendor possessed only of the bare legal title. In *Marvin* v. *Brewer,* 30 Md. 247, it was said by this Court, that, when the contract to convey was signed, "there was an executed contract by which the equitable estate and interest in the land passed to Brewer (the vendee) from its date."

And in *Brewer* v. *Herbert,* 30 Md. 301, JUDGE MILLER, in speaking of the character of estate which passed after the execution of a written contract of sale for a house and lot, and before the day fixed for delivery of possession and the payment of the first instalment of the purchase money, said: "In contracts of this kind between private parties, the vendee in equity is the owner of the estate from the time of the contract of sale." And in the same case quoting from the opinion by LORD ELDON, in *Paine* v. *Miller,* 6 Ves. 349, as

follows: "For if the party by the contract has become in equity the owner of the premises, they are his to all intents and purposes. They are vendible as his, chargeable as his, capable of being encumbered as his; they may be devised as his; they may be assets; and they would descend to his heirs," said further: "This decision has always been regarded as fixing the true equitable rule in such cases. From these, and other authorities of equal weight announcing the maxim that equity regards as done that which was agreed to be done, is deduced as the established doctrine in equity, that from the time the owner of an estate enters into a binding agreement for its sale, he holds the same in trust for the purchaser, and the latter becomes the trustee of the purchase money for the vendor."

And in *McRae* v. *McRae,* 78 Md. 270, it is said: "By the terms of the contract, the land ought to be conveyed to the trustee, and the purchase money ought to be paid to the vendor upon the principle, that that shall be considered as done which the parties have contracted to do. And hence the vendor will be treated as a trustee for the purchaser of the estate sold, and the vendee as a trustee for the vendor of the purchase money to be paid. The vendee is, in fact, considered as the owner of the land and although the vendor may still retain title, he holds it as a trustee for the vendee, to whom all the beneficial interest has passed, with a lien on the estate as security for any unpaid portion of the purchase money."

This then being the relative status towards land of persons, between whom there exists a valid contract for its sale, it follows, that the whole equitable estate had passed out of Lilly to the Cutsails on the date of the deed to them, and he held the bare legal title, and that only until the deed should be recorded, and this could not have been seized and sold under an execution.

We are perfectly conscious of the fact, that there are decisions of this Court, in which there is an apparent conflict with the conclusion reached above and that there are many

broad expressions in the opinions of this Court, which would seem to indicate that creditors of a vendor in a deed recorded after the six months' period are protected, in the same manner as in the case of a deed of mortgage. But it will be found upon an examination of the latter cases that they all were concerned about mortgage deeds and not deeds of conveyance proper, or that the instrument partook of the nature of a mortgage, and that when the broad expressions were used, there was, in mind, the provisions relating to unrecorded mortgages and not Article 21, section 21 relating to absolute conveyances.

The effect of the execution upon the judgment in this case can not be the subject of much controversy in this State, after the determination of the standing of the parties to the deed from Lilly to Cutsail.

In *Dyson* v. *Simmons*, 48 Md. 207, CHIEF JUDGE ALVEY, in delivering the opinion of the Court, discussed the question, of whether the lien of a judgment could be displaced or subordinated to that of a prior equitable mortgage or charge, by saying in part: "The question, however, both in England and in this State, has long since been settled; and the cases, without exception, so far as we are informed, hold that a judgment, being but a general lien, must be subordinated to the superior equity of a prior specific lien, created by a defective mortgage or conveyance. Judgments create liens only because the land is made liable by statute to be seized and sold on execution, but such lien secures to the creditor neither *jus in re* nor *jus ad rem*. At the time of the execution of this mortgage the mortgagor had full and complete power of conveying the land provided it was *bona fide* as against existing creditors, and the general principle is, that if a party has power to charge certain lands, and agrees to charge them, in equity he has actually charged them; and a Court of Equity will enforce the charge. And the fact that judgments have been subsequently recovered against the party agreeing to convey or charge the land, will in no manner defeat the right to have the agreement executed.

As has been very properly said, a judgment has relation to the time when it is entered up. It will not affect any *bona fide* conveyances made for value before that time, for it only attaches upon that which is there, or afterwards becomes the property of the debtor. The fact that the debtor may retain the property at law does not change the principle upon which a Court of Equity proceeds. If the property is charged in equity before the entry of the judgment the judgment will not affect such charge. The judgment creditor therefore, stands in the place of his debtor, and he can only take the property of his debtor, subject to the equitable charges to which it was liable in the hands of the debtor, at the time of the rendition of the judgment."

This quotation would seem to settle this point, for it states clearly and correctly what has always been the law of this State.

The case of *Valentine* v. *Seiss,* 79 Md. 187, is directly in point on the whole phase of the case.

If Article 21, section 21 was designed for the protection of creditors, then the framers were unfortunate in their choice of expression; but it is not for the Courts to place a meaning upon statutes in direct violence with the language employed. And in applying the statute to this case we must hold that the judgment can not affect the rights of the appellees; and, for these reasons, have heretofore filed our *per curiam* order affirming the decree of the lower Court.