GEORGE W. LINDSAY ET AL., RECEIVERS, *v.* JOSEPH STEMPER.

GEORGE W. LINDSAY ET AL., RECEIVERS, *v.* COMMUNITY GARAGE COMPANY, INC.

[No. 116, October Term, 1933.]

*Decided January 31st, 1934.*

The causes were submitted on briefs to BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Morris A. Rome, Irving B. Grandberg,* and *Nathan Hamburger,* for the appellants.

*W. LeRoy Ortel* and *T. Bayard Williams,* for the appellees.

OFFUTT, J., delivered the opinion of the Court.

The question which these appeals were intended to present is whether one who deposits money, as collateral security against loss, with a depositary which later became insolvent, is entitled to a priority over general creditors in the distribution of the insolvent estate, where the anticipated loss never occurred and the depositor is not indebted to the depositary.

The record shows these facts: The Lambert Automobile Company was the agent for the sale and distribution of Hudson and Essex automobiles, parts, and accessories, in a territory which included the Dundalk district in Baltimore County, Maryland. On November 21st, 1932, it entered into a written contract with the Community Garage, Inc., under

which it granted to the garage company the non-exclusive right to sell Hudson and Essex automobiles and chassis in certain territory, including the Dundalk district. As a part of that agreement, the garage company, called the dealer, deposited with the distributor $250 to secure it against any loss which the distributor might suffer either through the failure of the dealer to perform its part of the contract, or from its failure to pay any debt due by it to the distributor for the purchase of parts, accessories, or other supplies, or from the failure of the dealer to pay any other claims which the distributor might have against it. On December 8th, 1932, the distributor entered into a similar contract with Joseph Stemper, trading as the Edgemere Garage, and in each instance the deposit was made in accordance with the terms of the contract, and the funds so paid were deposited by the distributor with other similar deposits in a bank and mingled with the general funds of the distributor.

On September 15th, 1932, the cash balance of the distributor was $7,872.57, and on the same day it had accepted deposits which had not been repaid amounting to $8,350.26. On September 15th, 1932, on the petition of the Lambert Automobile Company, George W. Lindsay was appointed a receiver for it, and later Reuben Oppenheimer was appointed a co-receiver with him. Why they were appointed receivers, what their powers, duties, and functions were, and whether the corporation was solvent or insolvent, does not appear from the record, which lacks many particulars necessary to any complete or intelligible statement of the facts involved in the question which the appeal is assumed to present.

In that state of the record there is nothing before this court upon which it can act. For it to assume, in the absence not only of proof but of allegations, that the corporation is insolvent, or that the receivers were appointed to wind up its affairs, would be pure speculation. It may be that it is insolvent, and that appellants were appointed to wind it up and distribute its assets, but if those were the facts it was the duty of the appellant to bring them to the attention of the court. If the corporation was solvent, then the orders

appealed from were nugatory and harmless, because the payment of one debt by a solvent debtor cannot injure other creditors, and no question of preference or priority would rise. If it was insolvent, then the orders appealed from would affect the appellants because the priority allowed would diminish the dividend to the general creditors. But since the record fails to show whether it was solvent or insolvent, or what powers and duties were imposed upon the receivers by the decree, the appeal must be dismissed.

It must also be dismissed for another reason. The general rule is that a receiver is not entitled to appeal from an order which merely affects the distribution of funds in his hands, since his duty is merely to hold such funds for the persons who may be entitled thereto, and not to take sides in controversies arising between claimants to said fund, where such claims, if established, would not diminish the entire estate in his hands for distribution, but would merely affect the order or priority of the payment of such claims. That rule was changed by chapter 460, section 1, Acts 1933, which provides: "Any receiver, trustee or other fiduciary appointed by, or acting under the jurisdiction of any of the courts of equity of this State, shall have the right of an appeal to the Court of Appeals from any final decree hereafter entered or heretofore entered, provided the time for appeal from such decree has not expired, by which any reference or priority between creditors or other persons interested in the estate, is determined. Provided, however, that no such appeal shall be prosecuted without the consent and approval of the court having jurisdiction over the estate."

Under that statute a condition precedent to the right "to prosecute" an appeal is the "consent and approval of the court having jurisdiction over the estate." That consent was not obtained in this case until more than four months after the passage of the orders appealed from, and more than two months after the orders for the appeals therefrom had been filed. The appeals therefore were not authorized either by the general rule or by the statute, and, when they were en-

tered, were entered without authority. The trial court undertook to remedy that defect by passing on October 11th, 1933, an order *nunc pro tunc* as of June 3rd, 1933. But obviously the trial court could not confer upon this court jurisdiction where none existed, nor by the mere use of the words *"nunc pro tunc"* give to an order passed in October the same effect it would have had if passed in June. Appellants, in attempting to avoid the effect of that construction of the statute, contend that the word "prosecute" refers not to the initiation of the appeal but to "carrying on" other proceedings in the case incident to an appeal already taken. But the word "prosecute" must be read in connection with the preceding words of the statute which confer "the right of an appeal"; they can refer to nothing else, and when so read limit the right to initiate an appeal. "Prosecute" as there used clearly means to take, order or enter an appeal, as well as to carry on an appeal which has already been taken either by the "receiver, trustee or other beneficiary." The provision which requires the consent of the court was evidently intended to protect estates from frivolous or pointless litigation, as well as from litigation which would subject the entire estate to costs and expenses, not for the benefit of all entitled to participate in its distribution, but to establish the claims of particular individuals or classes, who, since they would receive the benefit of the litigation if successful, should bear its burdens. That purpose could not possibly be gratified by a construction of the statute which would place upon the trial courts the burden of deciding, after an appeal had been taken and costs and other expenses incident thereto incurred, whether the estate or the receiver personally should bear that expense. If the appeal was unauthorized, the expense thereof to the appellant would be chargeable to the receiver personally. If it was authorized, it would be charged to the receiver as such. Nor is there anything in the language of the statute which supports the inference that the Legislature intended to confer upon courts of equity the power to validate appeals which were invalid when entered, nor by their approval to subject

estates to costs and expenses incurred through the unauthorized acts of receivers done for the benefit of particular claimants.

So that the words "prosecute" as used in the statute, while broad enough to include the right to carry on the proceedings incident to an appeal after it had been taken, for that would be an ordinary incident of the right to appeal, primarily means the right to take an appeal. Without the statute no such right would exist, and the limiting clause refers to and qualifies the enabling clause which alone grants the right.

In view of that conclusion, the question intended to be presented by the appeals is not before the court and cannot be considered.

*Appeals dismissed, with costs in this court to the appellees.*