In re IMPERIAL BREWING CO.

HAMBURGER v. INTERNATIONAL HARVESTER CO.

No. 4900.

Circuit Court of Appeals, Fourth Circuit.
April 22, 1942.

M. William Adelson, of Baltimore, Md. (Louis J. Sagner, of Baltimore, Md., on the brief), for appellant.

John H. Hessey, of Baltimore, Md. (James J. Lee, of Baltimore, Md., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and WARING, District Judge.

WARING, District Judge.

This is an appeal from the District Court of Maryland in the matter of Imperial Brewing Company, Bankrupt. The question before us is whether or not a conditional sales contract, held by the International Harvester Company covering certain automobile trucks, is valid as against certain other creditors of the bankrupt.

It appears that on October 1, 1940, Imperial Brewing Company ordered from the International Harvester Company two new trucks. The price agreed upon for these trucks was $1,787.26. This was to be paid by a cash payment of $327.26 and an allowance of $380 for two old trucks to be traded in, and the balance of $1,100, plus a finance charge of $66 was to be taken care of by deferred payments. All of this was set forth in a conditional contract of sale, which, among other things, provided "The title to all goods ordered and furnished hereunder shall remain in the seller until the full purchase price and all notes given therefor have been paid in full in cash, and nothing herein shall release the purchaser from paying therefor, *and after delivery to the purchaser* said property shall be held and used at his risk and expense with respect to loss or damages and taxes and charges of every kind." (Italics added.) It further appears that this order was accepted on October 2, 1940, and on October 5, 1940, Imperial Brewing Company drew and delivered its check (dated October 4, 1940), to International Harvester Company for the agreed cash payment, namely: $327.26. It also gave its check for an additional sum of $40.73 payable to the Commissioner of Motor Vehicles for the tax and title transfer. Both of these checks were paid. Under date of October 5, 1940, Imperial Brewing Company executed and delivered its note for the balance due, namely: $1,166. This note described the terms and conditions of payments to be made and the trucks purchased and among other things, provided that the maker agreed "that the title thereto and to all repairs, replacements of and accessions to said property shall remain in the payee until this note shall have been fully paid in money".

The title certificates for the trucks were issued in the name of Imperial Brewing Company and showed a lien in favor of International Harvester Company and were delivered to such last named Company by the Commissioner of Motor Vehicles of

the State of Maryland and were to be surrendered to the Imperial Brewing Company only on the payment of such lien. It is shown by the records of International Harvester Company's work shop that some minor changes and painting of the trucks had to be done; and on October 7th, the trucks were sent to the Modern Auto Painting Service (an independent painting Company in Baltimore), for the purpose of painting thereon the name and address of Imperial Brewing Company. This work was done according to directions of the brewing company and the painting bill amounting to $30, was sent directly to and paid by it on October 18th. The painting job was completed on October 11th, and the painting company sent the trucks back to the International Harvester Company for some minor adjustments. In the agreed statement of facts on file in this case it is stated that this "was customary". Thereafter on the same date, October 11, 1940, the Imperial Brewing Company obtained delivery of the two new trucks and turned over to the International Harvester Company one of the old trucks taken in trade and the other old truck was turned over on the next day.

The conditional sales contract was recorded by the International Harvester Company on October 11, 1940, the same date on which the trucks had been actually turned over by such company to the purchaser. It is admitted in the records that during the period between October 6, 1940, and October 11, 1940, six persons became creditors of Imperial Brewing Company and that such indebtedness still remains unpaid.

The foregoing facts appear in the record and there is no dispute whatsoever in regard to them. Some time thereafter Imperial Brewing Company went into bankruptcy and Nathan Hamburger was appointed Trustee. The Trustee filed a petition for authorization to sell the trucks as assets of the estate and the International Harvester Company asserted title to the trucks by reason of the conditional contract of sale. With the consent of the parties the trucks were sold for the sum of $1,300, which said sum has been deposited subject to the further order of the court, it being understood that all questions of title passed from the trucks to the fund in hand. The amount claimed by the International Harvester Company was the sum of $1,000, and after a hearing before the Referee the Trustee was ordered to pay that sum. A petition for review was filed and the District Judge affirmed the Referee's order and the case is now in this court on appeal therefrom.

The question presented to this court is whether or not the conditional sales contract is void as to those persons who became creditors of the bankrupt between the date of the execution of such contract, to-wit: October 5, 1940, and the date of its recording, October 11, 1940. This of course must be decided in the light of the Statutes of the State of Maryland and the laws applicable thereto. Section 71 of Article 21 of Flack's Annotated Code of Public General Laws of Maryland is as follows:

"Conditional Contracts of Sale"

"71. Every note, sale or contract for the sale of goods and chattels, wherein the title thereto, or a lien thereon, is reserved until the same be paid in whole or in part, or the transfer of title is made to depend upon any condition therein expressed and possession is to be delivered to the vendee, shall, in respect to such reservation and condition, be void as to third parties without notice until such note, sale or contract be in writing, signed by the vendee, and be recorded in the Clerk's office of the Superior Court of Baltimore City, or in the Clerk's office of the Circuit Courts of the various counties, as the case may be, where the vendee resides, or in the case of a corporate or partnership vendee, then where such vendee has its principal place of business in the State of Maryland; and such recording shall be sufficient to give actual or constructive notice to third parties when a memorandum of the paper writing signed by the vendee or vendees, setting forth the date thereof, the amount due thereon, when and how payable and a brief description of the goods and chattels therein mentioned shall have been recorded with the Clerk aforesaid, but it shall not be necessary that said paper writing shall be acknowledged or an affidavit made to the consideration therein expressed as in the case of bills of sale."

It will be noted that the language of the Maryland Statute is somewhat unusual, differing in many respects from the uniform statutes adopted in so many states and differing from the statutes of any other state, to which our attention has been called. Under these circumstances, we

naturally must first turn to the courts of Maryland for construction of this Statute. However, it appears and is definitely admitted by all parties to this controversy that there are no decisions in the State of Maryland throwing light on the construction of this statute as applied to the particular case under consideration. Our own independent research also failed to reveal a Maryland case which governed this point. We are, therefore, cast upon our own resources in endeavoring to construe the statute.

The appellant admits, of course, that the contract is valid as to creditors whose claims arise after the date of the recording of the contract. But he further claims that the Harvester Company can not claim the protection of this conditional sales contract as against the six creditors above referred to, by reason of the fact that the trucks were delivered on October 5, 1940, but the contract was not recorded until October 11, 1940, and, therefore, the claims of the intervening creditors attach to the property during the period between delivery and recording. The primary question, therefore, is whether or not the trucks were delivered on October 5th or October 11th.

It will be noted that the Statute provides that in every case where title or a lien is reserved, and possession is to be delivered to the vendee, the conditional sales contract shall be void as to third parties without notice until the contract is recorded. It has been suggested by the appellant that the statute does not refer to the time of the actual delivery of possession and that the phrase "possession is to be delivered" applies solely to contracts wherein delivery has not been made and that therefore, the intendment of the statute is that the contract is to be recorded at the time of execution and not at the time of delivery. The argument is ingenious, but in our opinion, not sound. We do not believe that the phrase "possession is to be delivered" was intended to apply only to a transaction in futuro. We believe the only fair and reasonable deduction to be drawn from that language is that it is a general phrase referring to a conditional sale and delivery thereunder, and does not exclude a conditional sale when the delivery was either contemporaneous with, or subsequent to, the execution of the contract. If the expression in the statute had been "possession is delivered", it could hardly be said that such an expression applied only to a present delivery and would not govern a delivery made either before or after the execution of the contract. Such being our construction of this language in the statute, the case, therefore, narrows down to the question of whether or not there was delivery on October 5th or on October 11th, and requires a re-examination of the facts and a decision as to what really occurred.

In a conditional sale of personal property, ordinarily possession and the right of use of the property is given to the buyer. The seller retains a certain measure of title to the property, which is often called security title, since it exists merely to secure the payment of any unpaid portion of the purchase price. The buyer receives what is often called a beneficial title, which ripens into full and absolute title when the buyer, according to the terms of the contract, has paid (or tendered) to the seller this unpaid portion of the purchase price.

At common law, the doctrine is well established that in conditional sales the mere transfer of possession of the property by the seller to the buyer, without any further elements on which an estoppel might be invoked against the seller, still leaves the claim of the seller in the property paramount to the claims of creditors of, or bona-fide purchasers from, the buyer. Sometimes this doctrine brought hardship to such creditors or purchasers; so that, to obviate this hardship, recordation statutes, similar to the instant Maryland Statute, have been enacted in many states.

Thus in 3 Jones on Chattel Mortgages and Conditional Sales, Section 1072, page 148, it is said: "The common-law rule being that in all cases the ownership of a conditional vendor of personal property is paramount to the claims of purchasers from, or creditors of, the conditional vendee irrespective of notice of any kind, the recording statutes were designed in derogation of this rule and to circumvent its supposed unjust operation to the detriment of persons dealing with the conditional buyer on the appearances of ownership which the possession of property indicates, and whom the law benevolently designates innocent purchasers and creditors."

In Vold on Sales, page 299, it is said: "In conditional sales transactions the

problem of *hardship on parties dealing with the conditional buyer in possession* through the secret reserved interest of the conditional seller is very similar to that which is so familiar in connection with chattel mortgages" . . . "in a large majority of states at the present time the problem of the secret lien in favor of the conditional seller is met by statutes somewhat analagous to chattel mortgage recording acts requiring the filing or recording of conditional sale contracts." (Italics added.)

In Williston on Sales, Section 327, page 512, it is said: "Conditional sales have become so common under modern methods of business and are so deceptive both to purchasers from the buyer and to the buyer's creditors, *since the buyer not only has possession of the property but ordinarily is entitled to use it and does use it as if it were his own,* that recordings acts have been passed in many States." (Italics added.)

But where the buyer has not acquired actual possession and, therefore, the general public or parties dealing with him in debtor and creditor transactions are not misled, there would seem to be no reason for recording of conditional sales contracts. Quoting again from Jones on Chattel Mortgages and Conditional Sales, supra: "If the buyer be not in possession, one dealing with him for the property could not be deceived by the appearances of ownership which possession and use present. The reasonable construction of such a statute is that unless, and until, possession has been transferred, recording is unnecessary."

The same recording statute of Maryland was before this court in the case of Friedman v. Sterling Refrigerator Company, 4 Cir., 104 F.2d 837. There is nothing in that case, however, in any way inconsistent with the views which we have expressed in this opinion.

We, therefore, have reached the conclusion that the case finally comes down to the very narrow point as to when delivery was made of the two trucks in question. As heretofore stated, the actual facts are not in dispute and our only problem is to find the true meaning of these facts and determine when actual delivery was made. The signing of the contract of sale does not of course prove delivery. Much more had to be done before the transaction was completed. The purchase price consisted of a certain amount of cash and the delivery by the purchaser to the seller of two old

trucks, which were being traded in as part of the purchase price. The new trucks had to be painted and had to be lettered with certain names or devices desired by the purchaser. Additional adjustments and conditioning had to be furnished by the seller. It is claimed that the fact that the licenses for the trucks and title transfers were issued in the name of the bankrupt shows that the seller had parted completely with its title and possession. This was a mere incident to the transfer of title and does not throw any light on the time of actual delivery and as a matter of fact, the certificates showed the seller retained a lien. The cash payments were made by the bankrupt when it executed the contract, but the delivery of the trucks to be traded in was not made until after the physical delivery of the new trucks. It is claimed that when the International Harvester Company sent the trucks to the Modern Auto Painting Service for painting thereon of the bankrupt's name and address, which service was to be paid for by the bankrupt, that this was a constructive delivery. However, the record clearly shows that upon completion of this painting work the Modern Auto Painting Service "as was customary", returned the trucks to the International Harvester Company. The words quoted above, namely: "as was customary", are taken from the agreed statement of facts and are most significant as showing the usual custom of business, namely: that where sales were made of trucks for business purposes and it was necessary that some painting job be done, such trucks were to be sent to a paint shop and then returned to the Harvester Company's place of business, there to be finally inspected and subjected to such adjustments as might be necessary before final and complete delivery. In this case the trucks came back, as was customary, from the paint shop to the Harvester Company's place of business and after making some minor adjustments the Harvester Company made actual delivery of the trucks upon the same day to the bankrupt and received from the bankrupt one of the old trucks, which was traded in, and the other of these trucks was delivered on the next day.

We think it clear from all of this that actual delivery was made on October 11th, the same day on which the conditional sales contract was recorded, and that the terms of the statute were, therefore, complied with fully and no creditors were

misled or deceived into believing that the bankrupt was in possession of the property before the conditional sales contract had been recorded. The actual delivery of possession and the recording having been made upon the same date, the seller's lien or title was complete and unbroken and it was entitled to exercise the same and to recover possession of the trucks for the purpose of satisfying its indebtedness. Such title or lien having passed in this case from the trucks themselves to the funds in the hands of the court we are clearly of the opinion that the seller, International Harvester Company, is entitled to be satisfied as to its debt from such funds and we fully concur with the conclusions reached by the District Judge in his order affirming the order of the Referee.

Affirmed.