TATELBAUM, TRUSTEE, ET AL. *v.* NATIONAL STORE FIXTURE SALES COMPANY, INC.

[No. 56, October Term, 1950.]

600

*Decided January 10, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

Submitted on brief by *Joseph W. Spector* for the appellant.

*John O. Herrmann,* with whom was *Jacob S. New,* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal, by trustees under a deed of trust from Honey Lane, Inc., for the benefit of its creditors,

from an order directing them to pay to the conditional vendor of certain chattels $5,294.63, the agreed balance due on two conditional sale contracts, substituted by agreement of counsel, with the court's approval, for the chattels in question, which were sold by the trustees.

The first contract, dated January 13, 1949, covers specified chattels, which appellee sells and Honey Lane purchases and for which it agrees to pay "the total price of *$8887.00 plus $117.14 sales tax* in the following manner, *$1,500.00* in cash with this order, *$2,232.54* on *January 17, 1949,* and the balance of *$5,332.20 is payable on delivery* instalments, the first being payable—after delivery or tender of delivery (to wit: *April 1, 1949*) * * *". [The words and figures above italicized where typewritten on a printed form.] The second contract, dated May 16, 1949, covers the same chattels specified in the first (except one item cancelled) and additional chattels specified, for all of which Honey Lane agrees to pay "the total price of *$9,901.75 plus 2% sales tax $184.42* in the following manner, *$3,732.54* with this order, * * * and the balance of *$6,353.62* is payable in *24* instalments, the first being payable— after delivery (to wit: *August 1, 1949*) * * *", viz., 24 monthly instalments of $264.75 each (except the last, $264.38). The price under the second contract covers all the chattels sold under either. Deliveries under the first contract began on April 26, 1949; no additional chattels specified in the second contract appear to have been delivered before August 1, 1949. The two payments aggregating $3,732.54 were made before April 26, 1949. The first contract was recorded May 3, 1949, the second May 19, 1949.

So far as appears from the record printed in this court, Goodman Construction Company was the only creditor with which Honey Lane had any transactions in or about April or May, 1949. About November, 1948, Goodman contracted with Honey Lane for construction for $45,600.44. The job was finished in about six months. Before work was begun Goodman was "guaranteed,

and the money deposited" with a building association. This contract price was paid in full, also $1,342 for extra work. On March 15, 1949, Goodman and Honey Lane contracted for a barbecue building for $5,000, $3,000 to be paid when the roof was completed, the balance of $2,000 by three notes in equal amounts payable at thirty day intervals from completion. The $3,000 was paid on May 5, 1949, the $2,000 was not paid. Goodman made payments for work and materials from March 18 to May 31, 1949, aggregating $4,300.84, but all or most of these payments were made for work done by Goodman for Honey Lane early in April or as early as March. There is some obscurity and contradiction in Goodman's testimony (in answer to leading questions) as to whether any work was done in May and whether all these payments were made for work under the barbecue contract or some for other work on a *quantum meruit* basis. For present purposes these questions are immaterial. There is no evidence that any work was done by Goodman for Honey Lane on April 26 or May 3, 1949 or any intermediate date.

On January 6, 1950, the lower court assumed jurisdiction of the trust estate created by the deed of trust from Honey Lane. The deed is not in the record. Presumably it was executed on or shortly before January 6, 1950. On January 12, 1950, appellee filed its petition for delivery to it of the chattels covered by the two conditional sale contracts. After answer by the trustee (and appointment of a co-trustee by the court) and hearing, the court on May 9, 1950, ordered the trustees to pay to appellees $5,294.63, the balance due, substituted for the chattels. The same day the court authorized the trustees to appeal. Code, Art. 5, sec. 43.

The principal question presented on this appeal is whether the conditional sale contracts are invalid as to any part of Goodman's claim. Chapter 355 of the Acts of 1916 (amended in 1931 in details not now material) provided, "Every note, sale or contract for the sale of goods and chattels, wherein the title thereto, or

a lien thereon, is reserved until the same be paid in whole or in part, or the transfer of title is made to depend upon any condition therein expressed and possession is to be delivered to the vendee, shall, in respect to such reservation and condition, be void as to *third parties* without notice until such note, sale or contract * * * be recorded * * *." Code of 1939, Art. 21, sec. 71. (Italics supplied.) By Chapter 430 of the Acts of 1949, approved April 29, 1949, effective June 1, 1949, for "third parties" was substituted "subsequent purchasers, mortgagees, incumbrancers, landlords with liens, pledges, receivers, and creditors who acquired a lien by judicial proceedings on such goods and chattels". In bankruptcy, as in other proceedings, the validity of conditional sale contracts, as against creditors, depends upon state law, but the consequences of invalidity as to particular creditors are different. Under the Bankruptcy Act, since the enactment of the Chandler Act in 1938, 11 U. S. C. A. § 1 et. seq., a conditional sale contract covering property of substantial value, invalid as against a $14 claim, may be set aside *in toto* by the trustee in bankruptcy for the benefit of all creditors. *Friedman v. Sterling Refrigerator Co.*, 4 Cir., 104 F. 2d 837, reversing (as to invalidity, not as to consequences of invalidity) In *re Wilhelm*, D. C., 25 F. Supp. 440; *Moore v. Bay*, 284 U. S. 4, 52 S. Ct. 3, 76 L. Ed. 133. Except in bankruptcy a conditional sale contract, invalid "as to third parties" was not (before June 1, 1949) invalid as to other creditors. *Thomas Roberts & Co. v. Robinson*, 141 Md. 37, 118 A. 198; *Gunby v. Mack International Motor Truck Co.*, 156 Md. 19, 25-26, 142 A. 596; *Beckwith Machine Co. v. Matthews*, 190 Md. 182, 187, 57 A. 2d 796, 175 A. L. R. 1360.

In the absence of recording laws conditional sale contracts were generally held valid, not only between the parties but also against purchasers or creditors. *Harkness v. Russell*, 118 U. S. 663, 7 S. Ct. 51, 30 L. Ed. 285. In Maryland, however, they were held invalid against *bona fide* purchasers for value without notice, *Hall v.*

*Hinks,* 21 Md. 406; *Lincoln v. Quynn,* 68 Md. 299, 11 A. 848, but valid against creditors or receivers or assignees for the benefit of creditors. *Praeger v. Emerson-Brantingham Implement Co.,* 122 Md. 303, 309, 89 A. 501. Whether this rule as to purchasers was changed by the Uniform Sales Act, (Acts of 1910, ch. 346; Art. 83, sec. 41), this court never had occasion to decide, as the common law and the Sales Act were modified by the recording act of 1916, c. 355. *Praeger v. Emerson-Brantingham Implement Co., supra,* 122 Md. at page 312, 89 A. at page 504.

In most states recording laws effect a sort of race of diligence in which holders of instruments recorded late and purchasers and lien creditors rank in order of time of recording or acquiring a lien by judicial proceedings. In Maryland the recording laws early proceeded on a different principle, viz., of protecting purchasers and creditors "who may trust such party after the date of the said deed" (Act of 1785, ch. 72, sec. 11; Art. 16, sec. 36, or "creditors who have become so before the recording of such deed or conveyance, and without notice of the existence thereof" (who were protected to a very limited extent, if at all, under Chapter 304 of the Acts of 1831, Art. 21, secs. 20-22; *Cramer v. Roderick,* 128 Md. 422, 429, 98 A. 42; and still less under Chapter 618 of the Acts of 1916, Art. 21, sec. 23; *Kinsey v. Drury,* 146 Md. 227, 126 A. 125). In Maryland, prior creditors who obtain judgments after the date of an unrecorded deed or mortgage gain no priority thereby; on the other hand, creditors who "trust" their debtor after the date of an unrecorded mortgage but do not obtain judgment have priority over the mortgage. *Dyson v. Simmons,* 48 Md. 207, 218; *Stanhope v. Dodge,* 52 Md. 483; *Cramer v. Roderick, supra; Kinsey v. Drury, supra.* By the Act of 1949 the conditional sale act of 1916 seems to have been so changed as to follow the plan of recording laws in other states and to depart from the peculiar principle of Maryland recording laws. Until 1949 the conditional sale act of 1916 followed the Maryland principle;

"third parties" included creditors who "trusted" the conditional vendee after delivery of the chattels and before recording of the contract: *Thomas Roberts & Co. v. Robinson, supra; Gunby v. Mack International Motor Truck Co., supra; Beckwith Machine Co. v. Matthews, supra.*

Since the purpose of recording is to protect against secret liens created by retention of title after delivery of possession, the requirement of recording is not applicable before delivery of the goods. In *re Imperial Brewing Co.*, 4 Cir., 127 F. 2d 766. The fact that the first contract was dated January 13, 1949 is immaterial. The recording law was applicable only from April 26, 1949, when deliveries began. As Goodman did not "trust" Honey Lane between April 26 and May 3, 1949, the contracts are valid against Goodman, and therefore against appellants, even if we assume that appellants could assert and enforce any rights of Goodman.

In *Gunby v. Mack International Motor Truck Co., supra,* 156 Md. at page 26, 142 A. at page 598, it was held that merely permitting interest to accrue or debts to remain uncollected was not such an act as amounted to "trusting" the conditional vendee or made the creditors "third parties". In *Friedman v. Sterling Refrigerator Co., supra,* it was said, "Since one of the creditors here furnished goods to bankrupt subsequent to the execution of the conditional sale contract and prior to its recording, we think it clear that the reservation of title therein contained was void as against such creditor, under the Maryland statute, and consequently void as against the trustee in bankruptcy under the provisions of the Bankruptcy Act to which we have referred. The learned judge below held to the contrary, on the theory that the crucial date in determining the status of the creditor was that on which the credit was agreed upon rather than that upon which the goods were delivered; but we find no authority for such distinction and we do not think it sound. The creditor's claim for goods sold and delivered, which is the claim upon which he

relies, does not arise until the delivery of the goods; and, in making the delivery upon which such claim arises and parting with title to the goods delivered, he is a 'third person without notice', whom it was the purpose of the statute to protect. The fact that delivery may have been made in accordance with a pre-existing contract is immaterial; for, notwithstanding such contract the seller could protect himself, if doubtful of the solvency of the purchaser, by refusing delivery or asserting a seller's lien. * * * Only upon delivery does he lose power to protect himself with respect to the goods sold, and it is clear that his status as a creditor, entitled to protection under the statute, must be judged as of that date." [104 F. 2d 840.] The court then proceeded to say, "It does not appear in this case, however, that delivery was made under a pre-existing contract" and reviewed the facts on this point. In a law review note on this case the above statements as to delivery under a pre-existing contract have been questioned, and it has been suggested that by analogy the case of *Gunby v. Mack Motor Truck Co., supra,* would warrant the conclusion that mere failure to refuse delivery under a contract (on the ground of insolvency) would not amount to "trusting" the vendee or make the creditor a "third party". 4 Md. Law Review 82. We should be slow to differ with the United States Court of Appeals, not only because of our respect for the judges of that court but also because such questions of Maryland law arise more frequently in bankruptcy than in state court proceedings. The facts of the instant case make it unnecessary to express an opinion on the question mentioned. There is no evidence that any goods were delivered or work done by Goodman for Honey Lane between April 26 and May 3, 1949. Nor is there any evidence of insolvency at that time. On the contrary, Goodman was paid $3,000 on May 5, 1949. If in any sense he "trusted" Honey Lane during that period, there is no indication that he lost by *then* trusting.

It is unnecessary to consider whether the Act of 1949 should be, or without impairing vested rights could be,

construed as applicable to the rights of these parties on and after June 1, 1949. Neither appellants nor Goodman could prevail under the Act of 1949.

Appellants also contend that the conditional sale contracts are invalid (*a*) because after delivery under the first contract the same property could not be the subject of a second contract; (*b*) because by accepting payment after default, *i. e.*, after delivery, the vendor waives forfeiture and becomes a general creditor; and (*c*) because without payments "on delivery" pursuant to the first contract, payment after delivery becomes a legal fraud against subsequent creditors. These contentions involve confusion of thought and statement; none are tenable. We may assume that the same property cannot be the subject of two present contracts of sale between the same seller and buyer; but this second contract only changed the terms of payment under the first. We may also assume that when an instalment contract form is so filled in that the balance is "payable in *on delivery* instalments," the result is ungrammatical; but the intent is clear. A conditional sale contract, like a mortgage or a pledge, is intended to furnish security in case of default. Such a contract payable on delivery is no more unlawful or incongruous than a mortgage to secure a demand note or an overdue indebtedness. A conditional sale is no less a conditional sale because it includes terms not usual in conditional sales. *Bailey v. Baker Ice Machine Co.*, 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275. Default is not a waiver of security. Waiver of the consequences of a particular default is not necessarily a waiver of future defaults or a release of security. Nor is default a "fraud" against subsequent creditors of the vendee. It is only the happening of the contingency expressly provided against. Appellants cite cases holding that under a "cash sale" delivery without payment may be a waiver of the condition of payment. A "cash sale" is the opposite of the so-called conditional sale. A "cash sale" is conditioned upon payment on delivery; a

"conditional sale" is conditioned upon delivery without payment and retention of title till payment.

Appellee moved to dismiss the appeal, on the authority of *Lindsay v. Stemper,* 166 Md. 257, 170 A. 766, on the ground that there is nothing in the record to show insolvency. *Lindsay v. Stemper* was an appeal by receivers; there was nothing to indicate whether the receivers were appointed on the ground of insolvency or on totally different grounds. It is possible for a solvent person to make a deed of trust for the benefit of his creditors, but it is not likely. It appears that Goodman at least is unpaid. Whether *Lindsay v. Stemper* is distinguishable we need not decide. As we find no error on the merits, we need not pass upon the motion to dismiss.

*Order affirmed, with costs.*