John McCloskey, Appellant, *v.* George M. Henderson, Respondent.

Conversion — conditional sale — failure to file agreement for conditional sale of heating apparatus until after a portion thereof had been installed and holder of building mortgages had made advances thereunder — agreement void as to mortgagee — purchaser on foreclosure of subordinate mortgages not liable in conversion — when contractor may retake uninstalled materials — entitled to recover value of tools brought upon premises and not surrendered.

1. An agreement of conditional sale of heating apparatus, which is not filed as required by statute (Personal Property Law, § 62), until after a portion of such apparatus is installed in certain houses in the course of construction and until after the holder of building mortgages on such realty has made various advances thereunder, is void as to such mortgagee, and where the holder of subordinate mortgages has foreclosed the same and purchased the premises subject to the liens of the building mortgages, he cannot under circumstances disclosed in this case be held liable, in an action for conversion, for the value of the apparatus so installed in the buildings although demand was made upon him therefor by the plaintiff.

2. Materials which had been delivered upon the premises but not installed as a part of the heating plants or attached to the premises, assuming that it was not so connected with that which had been attached as to be an integral and constituent part thereof so as to be fairly regarded as going with it, were not covered by the building mortgages and defendant acquired no right to retain possession thereof as against plaintiff's demand. Upon the evidence presented plaintiff

was entitled to retake the detached property and defendant was guilty of conversion in refusing to surrender it to him.  Plaintiff was also entitled to recover the value of his tools which had been brought upon the premises for carrying on his work and which defendant refused to surrender.

*McCloskey* v.. *Henderson*, 187 App. Div. 900, reversed.

(Submitted January 25, 1921; decided April 26, 1921.)

APPEAL from a judgment, entered January 28, 1919, upon an order of the Appellate Division of the Supreme Court in the second judicial department, reversing a judgment in favor of plaintiff entered upon a verdict directed by the court and directing a dismissal of the complaint.

*Robert P. Orr* for appellant.

*Wilmot Y. Hallock* for respondent.  The appellant's conditional bill of sale of the steam heating apparatus, not having been filed until after delivery and installation, was void.  (*McMillan* v. *Seaman*, 101 App. Div. 436; *Jermyn* v. *Hunter*, 93 App. Div. 175; *McFadden* v. *Allen*, 134 N. Y. 489; *Kirk* v. *Crystal*, 118 App. Div. 32; 193 N. Y. 622; *Kline* v. *Cohen*, 142 App. Div. 500; *Cohoes I. F. & M. Co.* v. *Glavin*, 190 App. Div. 87; *Union Stove Works* v. *Thomas*, N. Y. L. J., June 30, 1916; *Rector* v. *Mach*, 93 N. Y. 488; *Batterman* v. *Albright*, 122 N. Y. 484.)

HISCOCK, Ch. J.   The plaintiff brought this action to recover for the alleged conversion of certain property conceded to have been in the possession of defendant. It consisted of a considerable amount of material supplied by plaintiff for the purpose of constructing and installing heating plants in a large number of dwelling houses and part of which had been actually installed and attached to the buildings and part of which was lying loose and

unattached upon the premises; and also of a small amount
of tools which had been brought and left upon the
premises for the purpose of · completing the work which
plaintiff had undertaken to do. The trial court directed
a verdict in favor of plaintiff for the value of all three
classes of property. The Appellate Division determined
that he was not entitled to recover for any of it and
dismissed his complaint. We feel compelled to hold that
both courts erred in the disposition thus made by them
respectively.

The substantial facts presenting the questions which
we are to consider are as follows:

Defendant sold to the Renslaw Realty Company two
pieces of land in the borough of Brooklyn and took back
two purchase-money mortgages, each to secure payment
of the sum of $21,250. The purpose of the realty com-
pany in purchasing this land was to erect thereon a
considerable number of dwelling houses, and in order to
carry forward this purpose three agreements were made
which enter into the present controversy.

A building loan agreement was made with the Lawyers'
Title Insurance and Trust Company to advance from
time to time in installments on each of the buildings
to be erected a certain sum to be secured by mortgage,
and in said agreement it was expressly agreed " that
all  *  *  * furnaces, ranges, mantles, grates and simi-
lar fixtures and articles and every fixture and improve-
ment attached to or placed in the said buildings to be
used in connection therewith shall in each case form part
of the mortgaged premises and shall be respectively
covered by and subject to the liens of the mortgages
given to secure the advances herein provided for." It,
secondly, was agreed that if certain initial payments
were made upon the above-mentioned mortgages given
to defendant he would subordinate the liens thereof to
mortgages to be given to the Title Company above men-
tioned to secure the advances by it from time to time

1921.]        Opinion, per Hiscock, Ch. J.        [231 N. Y. 130]

made as above stated.   And lastly, a contract was made between the plaintiff and the Realty Company that the former would supply the materials and perform the work necessary for the installation in each house of a heating plant.   It was provided in this last agreement that the title to such property should remain in the plaintiff until paid for, but the agreement providing for such conditional sale was not filed in the proper office as required by statute until after various advances had been made by the Title Company under the building mortgages executed to it.

The various parties entered upon the performance of the agreements above mentioned.   The plaintiff supplied materials for the construction of heating plants in the different houses and partially completed the installation thereof.   Between the dates when such materials were so supplied and affixed to the realty in the process of installing such plants and the date when the conditional sales agreement between plaintiff and the Realty Company was filed in the register's office the Title Company under its mortgages advanced various installments of moneys used in the erection of said buildings and the defendant, the initial payments having been made upon his mortgages, executed various agreements subordinating the liens thereof to the mortgages taken by the Title Company to secure payment of the installments by it thus advanced.

After a while the building scheme of the Realty Company collapsed and operations thereunder were suspended.   The defendant went into possession of the premises, whether strictly as mortgagee in possession or not it does not appear, and subsequently on the foreclosure of his mortgages became the purchaser of said premises subject to the liens of the mortgages held by the Title Company which so far as appears have never been paid. While he was thus in possession before the foreclosure sale and again after purchase under the latter, demand, assumed to have been sufficient in form, was made upon

him for the property already described and this demand having been refused this action in conversion was brought.

Upon the record and arguments as now presented we do not see any opportunity for debate of the proposition that plaintiff was entitled to recover the value of his tools which had been brought upon the premises for carrying on his work and which defendant refused to surrender. We, therefore, pass this branch of the case without further discussion in order to proceed with the consideration of the questions which arise in connection with the property delivered by plaintiff on the premises under his conditional bill of sale and of which part had been attached to the realty and part had not. We shall take up first a consideration of the property which had been attached.

It seems to have been thought at the Trial Term and still to be thought by counsel that the question whether plaintiff can recover for the value of this property depends upon the further query whether it can be removed without injury to the realty and this was one of the questions submitted to the jury. But we prefer not to make that the controlling question. The evidence quite conclusively indicates that the property which had been actually installed and affixed to the real estate would have become part thereof and not removable unless this result was prevented by special circumstances indicating a different and controlling intention. It will be assumed that if it was operative the conditional character of plaintiff's contract for furnishing the heating plants would have been such proof of the intention of the parties as would have prevented the property from becoming realty. (*Fitzgibbons Boiler Co.* v. *Manhassett Realty Corp.*, 125 App. Div. 764; reversed on dissenting opinion, 198 N. Y. 517.) A decisive question, therefore, becomes the one whether plaintiff lost the benefit of the conditional sales provisions of his contract and was prohibited from detaching and taking away such prop-

erty by force of the statute requiring the filing of agreements for conditional sales, and as a basis for the consideration of the effect of this statute as between plaintiff and defendant it becomes necessary primarily to consider what its effect was as between plaintiff and the Title Company which held the building mortgages.

That company advanced certain installments under its mortgages between the times when the plaintiff's property was attached to the realty and the date when the conditional sale agreement was filed, as provided by the statute, and there is no suggestion that it was otherwise chargeable with knowledge of the conditional character of plaintiff's contract. The statute applicable to such conditional sales provides that " Every such contract for the conditional sale of any goods and chattels attached, or to be attached, to a building, shall be void as against subsequent *bona fide* purchasers or incumbrancers of the premises on which said building stands, and as to them the sale shall be deemed absolute, unless, on or before the date of the delivery of such goods or chattels at such building, such contract shall have been duly and properly filed and indexed as directed in this article," etc. (Personal Property Law [Cons. Laws, ch. 41], section 62.) Under these circumstances in our opinion the Title Company as to its mortgages covering the installments which have been mentioned was plainly a *bona fide* incumbrancer under the statute; the lien of its said mortgages covered the property affixed to the realty and it would have been an act of waste for the plaintiff to tear out the same which said Title Company could have forbidden and enjoined. ( *Kirk* v. *Crystal,* 118 App. Div. 32; affd., 193 N. Y. 622; *Schmaltz* v. *York Mfg. Co.,* 204 Penn. St. 1.)

We then consider what position defendant had acquired at the time of the alleged conversion as to such attached property. We do not think that by subordinating his mortgages to the installments advanced by such Title

Company he became a subsequent *bona fide* incumbrancer within the meaning of the statute, but it is not necessary definitely at this time to decide that question. We think that for other reasons he had a right to refuse to become a voluntary and permissive party to the act of waste and destruction of mortgaged property which plaintiff proposed to commit, by giving up the property.

First, as it now appears defendant originally was in possession of the premises, so far as this question is concerned, in the general character of a mortgagee in possession and undoubtedly it was his duty to the first mortgagee, the Title Company, to refrain from committing waste himself and within certain limits to preserve the property from waste and destruction by other causes. As such he had a perfect right and an undoubted duty to refuse to aid plaintiff in his unlawful purposes by helping to detach and deliver to him the property in question. He would have made himself personally liable for waste if he had done otherwise than he did. (*Barnett* v. *Nelson*, 54 Ia. 41; *Turner* v. *Johnson*, 95 Mo. 431, 438; *Miller* v. *Ward*, 111 Me. 134; *Benham* v. *Rowe*, 2 Cal. 387; *Shaeffer* v. *Chambers*, 6 N. J. Eq. 548; *Morse* v. *Whitcher*, 64 N. H. 590; *Place* v. *Sawtell*, 142 Mass. 477.)

Furthermore, and in the second place, we think that under the circumstances of this case the defendant in his own right and for the protection of the lien of his own mortgages was justified in refusing to consent to the proposed acts of waste by plaintiff. The evidence fairly justifies the inference that the mortgagor had become insolvent and that the premises were insufficient security for the mortgage liens. The defendant had subordinated his mortgages to the lien of the mortgages of the Title Company under circumstances and statutory provisions which gave the latter a lien for payment of its advances, so given priority, upon property which we are assuming was not subject to the lien of defendant's

mortgages. In view of the apparent insufficiency of the security, under perfectly familiar principles defendant had the right to insist that the Title Company should enforce its lien against this extra property and that it should not by releasing the same throw a heavier burden upon the property to which defendant was compelled to look for satisfaction of his claims. If this be so, it must be also true that defendant had the right to refuse to comply with plaintiff's demand and refuse to aid the commission of the very act of waste which he would have had the right to forbid.

There is some evidence of a renewed demand by plaintiff upon defendant for this property after the latter had become a purchaser at the foreclosure sale, but it does not appear to us that the situation had then so changed as to require any further discussion or different conclusions of or as to the rights of the parties. If defendant was guilty of conversion in not complying with the first demand plaintiff's cause of action then became complete and he gained nothing by a further demand. If, as we think, defendant had the right to refuse plaintiff's demand when he was in possession as a mortgagee, this right was not diminished or lost when he became seized and possessed of the premises as a purchaser at the foreclosure sale.

This leaves for final consideration the rights of the parties in respect of materials which had been delivered upon the premises but not installed as a part of the heating plants or attached to the premises, but which are described as " lying loose " thereon. The evidence in respect of this class of materials is so indefinite and the discussion so incomplete that we can only speak in a tentative manner and subject to further consideration hereafter if the question becomes material.

Assuming that this so-called loose material had not in any manner been attached to the realty and that it was not so connected with that which had been attached as

to be an integral and constituent part thereof so as to be fairly regarded as going with it, we do not think that it was covered by the mortgages to the Title Company or that defendant through the processes of reasoning hereinbefore followed acquired any rights to retain possession thereof as against plaintiff's demand. So far as the present record discloses we are dealing with mortgages of real estate and not chattel mortgages, and in the case of such former mortgages it was the purpose of the statute to prevent that species of fraud which often resulted from the fact that a mortgagee advancing money upon real estate containing fixtures and improvements appearing to be permanently and finally attached thereto, found that with the assistance of conditional sales agreements covering the same his rights were liable to be defeated. The act cannot be construed for the benefit of a mortgagee of real estate as converting into real estate that which is clearly personal property.

Therefore, as stated, without finally determining this question beyond the opportunity for a reconsideration if it shall be material, it seems to us upon the evidence as now presented that the plaintiff was entitled to retake this detached property and that defendant was guilty of conversion in refusing to surrender it to him.

These views lead to the conclusion that the judgment of the Appellate Division dismissing plaintiff's complaint should be reversed and a new trial ordered, with costs to abide event.

Hogan, J. This action was brought to recover sixteen hundred dollars, the value of certain chattels alleged to be the property of plaintiff and to have been wrongfully detained by defendant.

The defendant was owner of two certain pieces of land in the borough of Brooklyn, one piece two hundred by one hundred feet situated on the easterly side of Bedford avenue about two hundred and forty feet south of Farragut

road. The second piece was about two hundred by one hundred feet located on the westerly side of Bedford avenue about three hundred feet southerly from Farragut road, which premises will be referred to as the easterly and westerly premises.

On March 17th, 1914, defendant conveyed the two several tracts of land to the Renslaw Realty Company, hereinafter referred to as the " Realty Company." On the same day the Realty Company executed two purchase-money mortgages, each mortgage to secure the sum of $21,250; one of said mortgages covered the easterly premises and the second one of the mortgages the westerly premises. The two mortgages were duly recorded in the office of the register of Kings county March 18th, 1914. Each of the mortgages provided for the payment of $6,250 thereon July 10th, 1914, and $15,000 and interest on May 1st, 1916. The premises described in each of the mortgages was vacant property, and as appears by recitals contained therein the Realty Company, mortgagor, contemplated the erection of eleven houses on each of said two tracts of land. That the Lawyers Title, Insurance and Trust Company, hereinafter designated as the " Title Company," was to advance from time to time on twenty-one building loan mortgages a sum not exceeding $4,500 on each of the buildings to be erected on the two several pieces of land. The defendant mortgagee covenanted in each of the two mortgages that upon the payment to him of the sum of $6,250 on account of principal, to be paid July 10th, 1914, he would subordinate each mortgage to the different advances as the same are made from time to time on the building loan mortgages by the Title Company.

In July, 1914, defendant received from the Realty Company $12,500 on account of the principal of said mortgages.

On April 30th and June 12th, 1914, the Realty Company and the Title Company entered into two agreements

in writing in each of which was recited that the Realty Company had applied to the Title Company for a loan of $49,500, or so much of the principal sum as shall at any time be advanced, to be secured by eleven bonds, each of said bonds to be secured by a first mortgage, and that the Realty Company covenanted to erect buildings on the lands, eleven in number, at a cost of not less than $57,750. Each mortgage was to be executed by all persons necessary to make it a valid first lien on the premises to be covered for the advances to be made on account thereon, and " it is expressly understood and agreed that all gas fixtures, bath tubs, dressers, wardrobes, · furnaces, ranges, mantles, grates and similar fixtures and articles and every fixture and improvement attached to or placed in the said buildings to be used in connection therewith shall in each case form part of the mortgaged premises and shall be respectively covered by and subject to the liens of the mortgages given to secure the advances herein provided for." Advances were to be made by the Title Company at stated periods as the work of construction of the house progressed. The final advance on completion.

The agreement of April 30th was filed in the office of the register of Kings county and the mortgage accompanying the same recorded in the same office on May first.

April 15th, 1914, the plaintiff submitted to the Realty Company a proposal in writing to furnish and complete the steam heat apparatus as per specifications for the net sum of $3,366. Houses were to be built in groups of eleven each, *i. e.*, on the easterly premises and the westerly premises. Payments were to be made on each at enumerated times. All materials furnished under this contract were to remain the property of plaintiff until fully paid for in cash and the agreement fully satisfied. In case of default of payment of any sum due under the contract plaintiff was authorized to remove the material from the premises. The proposal was accepted by the

Realty Company on April 23d, 1914, but the conditional bill of sale was not placed on file until a date subsequent to the recording of the mortgages held by the defendant and the Title Company. The first delivery of materials, articles, etc., was made by plaintiff subsequent to May 15th, 1914.

The plaintiff continued to deliver articles, materials, etc., and to perform labor incident to an installation of the steam apparatus in the houses on the easterly premises until late in August, when all work was discontinued by the Realty Company. At that time, according to the evidence of plaintiff, the boilers were in place and set up by the flues, some of the boilers were not connected and water connections had not been made, the smoke stacks were there but were not in, all rising pipes were up through the floors, some special radiators were wanting there and forty-three or forty-four radiators were lying around loose in various rooms, and there was very little stuff to be furnished but certain loose material was lying around the premises. Upon the westerly premises the only articles delivered were rough piping that had been strung and some riders run up. September 12th, 1914, the defendant commenced an action to foreclose his mortgages. Judgment was thereafter and on November 25th, 1914, entered and the lands covered by the mortgages were sold December 31st, 1914, to defendant subject to the rights of the holders of conditional bills of sale or chattel mortgages if any.

Work on the houses having been stopped by the Realty Company late in August, the plaintiff early in October asserted ownership of the various articles and materials delivered by him upon the premises and made demand of defendant therefor. He was not permitted to remove the property and thereupon brought this action for a wrongful detention of the same.

Upon the trial there arose a conflict of evidence as to whether or not the articles in place could be removed

from the premises without injury to the buildings. The court submitted three questions to the jury, (a) was the plaintiff's heating apparatus of such a nature that it could be removed without injury to the realty, (b) what was the value of the plaintiff's heating apparatus at the time of the conversion, and (c) what was the value of the articles which were not affixed but which were on the property on October 5th? The jury answered " Yes " to the first interrogatory, to the second interrogatory $1,536.54, and to the third interrogatory $890.09. Upon receipt of the special verdict the court granted judgment to plaintiff in the sum of $1,536.54. Upon appeal, the Appellate Division ordered and adjudged that the judgment and order denying motion for a new trial be reversed and the complaint dismissed.

The order of the Appellate Division and the consequent judgment thereon must be reversed and a new trial granted.

The complaint alleged a wrongful detention by defendant of articles, material, etc., together with a tool chest containing steam fitter's tools, all of which were enumerated in a bill of particulars. Evidence of a detention by defendant of the chest and tools after a demand for the same and that the value thereof was ninety dollars was offered by plaintiff and was ample to justify a recovery for the chest and tools irrespective of any material or articles.

Counsel in his brief urges that by reason of the intention of the parties to the conditional bill of sale, i. e., the plaintiff and the Realty Company, the materials and articles delivered by plaintiff were a part of the realty; that the conditional bill of sale not having been filed until after the delivery of such materials and articles was void under the provisions of section 62, Personal Property Law (Cons. Laws, ch. 41), which provides in substance that a contract for the conditional sale of any goods and chattels attached, or to be attached, to a building shall be void as against subsequent *bona fide* purchasers or incum-

brancers of the premises on which the said building stands, and as to them the sale shall be deemed absolute unless, on or before the date of the delivery of chattels at such building, such contract shall have been duly and properly filed as provided in said section, and argued that under said section the bill of sale was void, (1) as against a prior mortgagee, without notice, who made advances after the delivery of the chattels, (2) as to a prior mortgagee who subordinates his mortgage to the building loan mortgage without notice of the conditional bill of sale, (3) as to the purchaser at a foreclosure sale under a mortgage where the mortgagee had no notice of the conditional bill of sale.

As to the first class, the record does not disclose advances of money without notice, after the delivery of chattels and performance of work by plaintiff, by a prior mortgagee unless it be by the Title Company whose rights, remedies or liability as between it and plaintiff are not involved in this action, the Title Company not being a party thereto.

The second and third classes may be considered together. Concededly the defendant was a prior mortgagee. His mortgage was recorded March 18th, 1914, several weeks before the conditional bill of sale was entered into on April 23d. Under the terms of the mortgages, defendant covenanted that upon payment of a certain amount on account of principal of the mortgages on July 10th, 1914, he would subordinate the mortgages held by him to the different advances as the same should be made from time to time by the Title Company on the building loan mortgages.

Payments of the amount agreed upon on account of principal on the mortgages held by defendant were made July 10th, 1914. Prior to such payments and between April 30th and July 10th defendant executed six several subordination agreements, some of which were executed prior to the delivery of any material by plaintiff.

Unless defendant is embraced within the class specifically enumerated in section 62 of the Personal Property Law as " subsequent *bona fide* purchasers or incumbrancers " he is not protected by the provisions of that statute. Defendant was not a subsequent *bona fide* purchaser of the premises. True, he bid in the property covered by the mortgages held by him at the foreclosure sale in December, 1914, subject to the rights of holders of conditional bills of sale or chattel mortgages, if any, but as such purchaser he did not acquire any right or interest in the premises other than that acquired by him under the mortgages of March 18th. Neither did he by reason of the execution of subordination agreements become a subsequent *bona fide* incumbrancer of the premises. The term " incumbrancer " in its application to real estate has a well-defined meaning in law, as a right or interest which may subsist to the diminution of the estate of the fee owner, in this case the Realty Company. An incumbrancer in good faith must of necessity part with value as a consideration for the incumbrance existing in his favor. In the case at bar the estate of the Realty Company on March 18th when defendant's mortgages were recorded was diminished to the extent of the amount secured to be paid thereunder. On April 30th when defendant subordinated his mortgages to the extent of advances made that day on the building loan mortgages, the execution of such instrument did not operate to a diminution of the estate of the fee owner or impair the security of the mortgages held by defendant. On that day six houses had been inclosed and under the terms of the building loan agreement the building company was entitled to an advance of $2,100 on each house inclosed, or a total of $12,600.

By the terms of the same agreement the houses of the Realty Company were each to cost a sum in excess of the amount to be advanced by the Title Company. These facts do not justify the suggestion that the defendant

parted with value as a consideration for a right or interest which would diminish the estate of the fee owner, or transform him from the status of a prior mortgagee to that of a subsequent *bona fide* incumbrancer.

My conclusion is that defendant is not entitled to invoke the protection of the Personal Property Law. A reference to the remaining subordination agreements is unnecessary.

The plaintiff and the Realty Company were at liberty to contract that the goods and chattels to be furnished by plaintiff should retain their character as personal property even though they should be attached to the realty, subject, however, to the limitation that such contract would not extend to such portion of the chattels as could not be removed without practically destroying them or when they were essential to the support of that to which they were attached. (*De Bevoise* v. *Maple Ave. Const. Co.*, 228 N. Y. 496.)

Upon the trial of the action evidence pro and con was given bearing upon the question as to whether or not any of the articles furnished by plaintiff were so attached to the buildings that they could be removed therefrom without injury to the same and the controverted fact was submitted to the jury who by answer to the specific question found in the affirmative.

The action being one for a wrongful detention of property it was incumbent upon plaintiff to establish a right of possession to the same. That proof he offered through the conditional bill of sale, and evidence tending to show that the property could be removed without injury to the realty or the articles together with evidence tending to show a demand made by him of defendant for the property, a refusal on the part of defendant to permit a removal of the same and an assertion of ownership by defendant of the property and command that plaintiff leave the premises. The nature of the action,

10

*i. e.,* unlawful detention, would admit of defendant establishing a right of possession in himself or in a stranger. (*Griffin* v. *L. I. R. R. Co.,* 101 N. Y. 348; *Whitney* v. *Whitney,* 171 N. Y. 176.) According to the evidence of plaintiff, the defendant claimed ownership of the property and it is important to consider the attitude of defendant as bearing upon his alleged ownership and right of possession. In the answer served by defendant he affirmatively alleged that he and his successors in title were the owners of the goods subject to the lien of the mortgage of the Title Company, and further affirmatively alleged that the Title Company was entitled to the *present* possession of the articles sued for. The position of defendant was not wholly consistent. As a witness referring to the demand made by plaintiff, defendant testified that he told plaintiff he could not consent to a removal of the goods for the reason that the property was in litigation, evidently referring to the fact that he had commenced an action to foreclose his mortgage. He denied that a watchman on the premises was his employee and stated that the watchman was the employee of the Realty Company, the owner, thus indicating possession as that of the company mortgagor. The record is barren of facts tending to establish a right of possession of the premises in the defendant or a third party. As mortgagee of the real estate defendant under the facts in this case did not assert or establish that he had a legal right to possession of the property as such mortgagee. Neither did he offer any direct evidence of ownership or right of possession in the goods. The counsel for defendant urged as one of the grounds upon a motion for a nonsuit at the close of the evidence: " At the time of the alleged demand, the defendant was not in possession of the property and could not deliver the property." The affirmative defense of ownership by defendant and his successors in title was not established. The title to the premises covered by the mortgages of defendant

was acquired December 31st, 1914, sometime subsequent to the demand, and the sale under foreclosure was as stated in the deed to defendant, subject to the right of the holders of conditional bills of sale or chattel mortgages if any. The question on the trial was the right of defendant to withhold possession of the articles on the day the demand was made, and such rule is applicable to the affirmative defense that the Title Company is entitled to the present possession of the goods. The term " present possession " refers to the date of the verification of the answer, January 31, 1916, some fifteen months subsequent to the demand made by plaintiff. While the record discloses a lien by mortgages on the premises it is silent as to any possession or right of possession of the articles in controversy in the Title Company in October, 1914. For the reasons stated I vote for a reversal of the judgment and order of the Appellate Division and a new trial.

McLAUGHLIN and CRANE, JJ., concur with HISCOCK, Ch. J., and CARDOZO and POUND, JJ., also concur, limiting themselves, however, in respect of right of defendant to refuse to deliver possession of property affixed to the real estate to ground first stated in opinion, and HOGAN, J., reads opinion concurring in result; ANDREWS, J., dissents and votes to affirm judgment of Trial Term.

Judgment reversed, etc.