RUPP ET AL., TRUSTEES, ETC., ET AL. *v.* M. S. JOHNSTON COMPANY, INC.

[No. 318, September Term, 1960.]

182

*Decided July 10, 1961.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*Charles C. W. Atwater* and *Walter C. Mylander, Jr.,* with whom were *Carlyle Barton, Jr., Herbert L. Rollins, Mylander & Atwater,* and *Niles, Barton, Gans & Markell* on the brief, for the appellants.

*Charles F. Wagaman,* with whom were *Robert E. Clapp, Jr.,* and *Wagaman & Wagaman* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The James T. Galloway Company was incorporated in 1957 by James T. Galloway and Alfred F. Flynn, Jr., who took equal shares of its stock. K & G Construction Company had been incorporated the previous year, under a similar stock arrangement, and had been engaged in the construction of cottages on a fifty-acre tract of land near Frederick. Galloway and Flynn were officers of both companies. In the latter part of 1959, Galloway and Flynn decided to build an apartment project on a portion of the tract. In September, 1959,

the Galloway Company applied to Metropolitan Life Insurance Company, through a mortgage brokerage firm, Weaver Bros., Inc., for a twenty-year first mortgage loan on the project, when completed, and received a commitment. On December 29, 1959, K & G Company conveyed the site, about ten acres, to the Galloway Company. A few days later Weaver Bros., Inc., acting for the Galloway Company, applied to the Maryland Trust Company (later merged with Baltimore National Bank) for a one-year construction mortgage. A deed of trust to Rupp and Tinley to secure a loan of $300,000 was executed and then recorded on January 27, 1960. Construction proceeded in due course, and a first advance payment became due and was made on February 23, 1960. Pursuant to the loan agreement, payments were to become due from time to time, according to the stages of construction, upon certification that the proper stage had been reached and that there were no intervening liens. Payment was made by crediting the amount of each advance to the checking account of the Galloway Company. In most cases the amount so credited was withdrawn by the Galloway Company and deposited to the credit of K & G Company in another bank and ultimately disbursed by K & G Company as purchasing agent for the Galloway Company.

M. S. Johnston Company, Inc., submitted to Galloway a proposal to furnish air conditioning and heating units for the apartment project on March 28, 1960. This was on a printed form with a clause retaining title until payment. The document was executed on March 30, 1960, and signed by the vendor and K & G Construction Company only, as vendee. Mr. Lusby, the engineer and salesman of the vendor, made inquiry as to the credit of the two companies, which he knew were somehow related, but did not inquire as to which company held title to the tract where the construction was in progress, although this was a matter of public record. He made no inquiry and received no information as to the recorded deed of trust. Apparently he chose to deal with K & G Company because he was familiar with its previous work in constructing cottages. The heading of the contract listed the names of both companies, but it was signed by only one.

Lusby did not record the conditional contract of sale until July 21, 1960. In the meantime, some sixteen units had been installed and billed to K & G Company on June 29, 1960. Between that date and August 1, 1960, four payments were made to the Galloway Company by Baltimore National Bank pursuant to its loan agreement.

Failing to obtain payment, the vendor offered its conditional sales contract for record. It was indexed against K & G Company. No memorandum was furnished, pursuant to the provisions of Code (1957), Art. 21, sec. 66. The clerk, however, made entries in the conditional sales docket showing the date, names of vendor and vendee, entered the word "equipment" under the heading "Description", and the amount. There was no reference to the place where the "equipment" was located. There was, however, a reference to the file (by number) where the document itself was placed. The instrument itself was not transcribed or recorded in any other fashion. There was a cross-index reference entered in the land records under the name of K & G Construction Company, the vendee.

On August 12, 1960, K & G Company paid $2,000 on account to its indebtedness of some $14,000 to the vendor. Shortly thereafter the officers of the Bank learned that the project was in difficulty. Mr. Rupp, the officer in charge of the account, was informed by Weaver Bros., Inc., that an additional $60,000 would be needed to bring utilities to the site. Interest on the loan was overdue and unpaid. After investigation, during which it developed that various suppliers were unpaid and the matter could not be worked out, default was declared, suit for foreclosure was instituted on October 14, 1960, and sale advertised for November 2, 1960.

The appellee filed a petition to intervene, claiming title to the sixteen units it had installed. The chancellor, after hearing, found in favor of the petitioner and pursuant to agreement of the parties, permitted the units to remain in the premises and be sold by the trustees. The order appealed from provided that $7,500 out of the proceeds should be paid to the petitioner ahead of all other claims and costs.

The appellants contend (1) that the Bank is a subsequent

incumbrancer by virtue of its advances made under the loan agreement after the units were installed, (2) that the conditional sales agreement was not properly recorded or indexed so as to charge it with notice of the purported reservation of title, and (3) that the units were so affixed to the realty that they lost their character as personal property. The appellee challenges these contentions and further contends that the appellants are equitably estopped from asserting their claims. The appellants counter with a contention that on general equitable principles, apart from the recording act, the appellee is barred from asserting its claim.

Code (1957), Art. 21, sec. 66, provides in part: "Every * * * contract for the sale of * * * any item of furnishing or equipment which is affixed to real property, wherein the title thereto, or a lien thereon, is reserved until the same be paid in whole or in part, * * * shall in respect to such reservation and condition, be void as to subsequent purchasers, mortgagees, incumbrancers, * * * until such * * * contract be in writing, signed by the vendee and be recorded as provided in this section and § 52 of Article 17, in the clerk's office of the * * * circuit courts of the various counties, * * * but in any case of any item affixed to real property, such recording shall be where such property is located and may also be where the vendee resides, or where a corporate or partnership vendee has its principal place of business in the State. Such recording shall be sufficient to give actual or constructive notice to such parties when a memorandum of the paper writing signed by the vendee or vendees, setting forth the date thereof, the amount due thereon, when and how payable and a brief description of the goods and chattels therein mentioned shall have been recorded with the clerk, aforesaid, provided, however, that, as to any item affixed to real property, such recording shall be sufficient to give notice to such third parties in transactions involving such real property only when the memorandum shall also contain a reference to such property sufficient for identification purposes and when such memorandum has been cross-indexed in the land records as provided in § 50 of Article 17. * * *."

The appellee relies strongly upon the case of *Tatelbaum v.*

*Pantex Mfg. Corp.,* 204 Md. 360. That case held that trustees under a deed of trust for the benefit of creditors did not come within any of the categories of persons protected by the section, although some creditors had extended credit between the date when the equipment was delivered and the date when the additional sales contract was recorded in the proper place. We think the case is distinguishable. The chief contention in that case was that the statute was discriminatory and unconstitutional because it omitted trustees *eo nomine* but included receivers who were in a somewhat analogous position. We held that there was a reasonable basis for classification and hence no unconstitutional discrimination. The trustees in that case had been chosen by the debtor in a voluntary assignment for the benefit of creditors. Judge Delaplaine, for the Court, pointed out (p. 373) that one of the possible reasons for the legislative exclusion was that the debtor "might have it within his power to make an assignment immediately after he purchases property on conditional contracts, and thereby cause loss to unwary vendors." He also pointed out that the creditors in that case were unsecured and could not claim to be mortgagees, incumbrancers, or creditors who acquired without notice a lien on the equipment by judicial proceedings.

The mere fact that the trustees in the instant case are not mentioned *eo nomine* in the section is not fatal to their claim. In *Auto. Accep. Corp. v. Universal C. I. T. Credit Corp.,* 216 Md. 344, 353, we held that the holder of a conditional sales contract was an "incumbrancer" within the meaning of the section. Moreover, the trustees named in the recorded deed of trust took title for the sole purpose of securing the Bank's loan and as a condition precedent thereto. The deed of trust was in the nature of a mortgage, and the trustees acted solely on behalf of the Bank. It is true that they were not simply nominal parties. *Hardy v. Gibson,* 213 Md. 493, 503. But the Bank was the real party in interest, as sole beneficiary under the deed of trust. If not a mortgagee in the strict sense, we think the Bank was at least an "incumbrancer." It is clear in the instant case that the future advances and payments due as the various stages of construction were reached were

obligatory under the building loan agreement, and not invalid. See *Frank M. Ewing Co. v. Krafft Co.*, 222 Md. 21, 26, *et seq.*, where the authorities were exhaustively reviewed by Judge Hammond, for the Court. See also Code (1957), Art. 66, sec. 2; *Wilson v. Russell*, 13 Md. 494; *Eisinger Mill, etc., Co. v. Dillon*, 159 Md. 185; *LeBrun v. Prosise*, 197 Md. 466; Watkins, *Maryland Mortgages for Future Advances*, 4 Md. L. Rev. 111.

The appellee argues, however, that the lien attached from the moment the instrument was recorded, that the future advances related back, and the appellants cannot claim to be "subsequent" incumbrancers. We think the argument mistakes form for substance. The advances were not required unless and until certain stages of performance had been reached. The fourth payment was only due after "plumbing and heating roughed in", the fifth after "rough electrical work complete", the sixth after "structure trimmed out". Before making each of these payments, the last being on June 24, 1960, before the conditional sales contract was recorded, the Bank received letters from Weaver Bros., Inc., stating that inspection disclosed that construction was completed to the stage called for. It was also advised by its attorney that no liens were of record in each case. The deed of trust specifically provided that the conveyance and lien covered present and future appurtenances and "the apparatus, chattels and fixtures now or hereafter attached to or used in connection with said buildings and improvements * * *." There can be little question that the several advances were made upon the faith of installation of the heating and cooling equipment called for in the specifications.

Under such circumstances other courts have held that the time when the advances are made, and not the time when the mortgage is recorded, is the controlling test as to whether the lender is a subsequent incumbrancer. See *Mississippi Valley Trust Co. v. Cosmopolitan Club*, 162 Atl. 396 (N. J. Ch.); *McCloskey v. Henderson*, 131 N. E. 865 (N. Y.); *Alf Holding Corp. v. American Stove Co.*, 171 N. E. 703 (N. Y.); *Chasnov v. Marlane Holding Co.*, 244 N. Y. Supp. 455 (Mun. Ct.). Code (1957), Art. 66, sec. 2, by its terms, as well as

by construction, is not applicable to a deed of trust in the nature of a mortgage. *Eisinger Mill, etc., Co. v. Dillon, supra.* It thus cannot be challenged on the ground held fatal in *Leister v. Bank of Westminster,* 199 Md. 241. Whether it could be challenged as one for indefinite future advances, even if a mortgage where the future payments were obligatory and timed with reference to stages of completion, is one we need not consider. But see *White Eagle, etc., Bldg. & Loan Ass'n v. Canton Lumber Co.,* 168 Md. 199, *Neeb v. Atlantic Mill, etc., Co.,* 176 Md. 297, and *Goertz v. Backman,* 195 Md. 450. The statute spells out what is recognized as the general rule, that the lien takes effect only from the date when the advances are made. See 36 Am. Jur., *Mortgages,* §§ 232, 235.

Since we hold that the Bank is a subsequent incumbrancer within the meaning of Art. 21, sec. 66, we only reach the question whether the conditional contract of sale was properly recorded in connection with the advances subsequent to July 21. But since the most diligent search of the record would not have disclosed anything in the nature of a reservation of title or lien as against the Galloway Company, there is no basis for a claim of constructive notice. The appellee argues that there was actual notice, in that there was some evidence that other suppliers were unpaid. Testimony on behalf of the bank showed, however, that in the case of each complaint investigation showed either that the Galloway Company claimed that the work had not been satisfactorily performed or that payments were not thirty days in arrears. There was testimony that Johnston told a representative of the Bank in July that his bill was unpaid but was not yet thirty days over-due. These complaints would hardly have justified the Bank in not making payments for work performed as scheduled. It never received notice that Johnston claimed title to the units installed at any time prior to its last advance on August 1, 1960.

Likewise, we think the claim of equitable estoppel is un-founded. The argument is that the deed of trust was in de-fault, almost from the start, in the payment of interest. This was a trivial amount and under the deed of trust did not con-stitute an automatic default. The Bank and the trustees were

clearly authorized to waive a provision that was for the benefit of the lender and not for the benefit of unsecured creditors. Cf. *Eisinger Mill, etc., Co. v. Dillon, supra.* See also *Johnson Lumber Co. v. Magruder,* 218 Md. 440, 446, stressing the necessity for diligence on the part of one claiming an estoppel. The appellee's failure to ascertain that the Galloway Company held title to the site, to have it sign the conditional sales contract as vendee, or to record seasonably the instrument might well be termed a lack of reasonable diligence under the circumstances. We do not reach the question whether the units in question were so affixed to the realty as to prevent the retention of title in any event.

*Order reversed, with costs, and petition dismissed.*