PIEDMONT LAND AND DEVELOPMENT COMPANY
*v.* CARNEY, ET AL.

[No. 259, September Term, 1962.]

*Decided June 17, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and SYBERT, JJ.

*Nicholas J. Fotos* for appellant.

*Bill L. Yoho,* with whom were *Robert S. Hoyert, Roy W. Hooten* and *Hoyert & Yoho* on the brief, for appellees.

PRESCOTT, J., delivered the opinion of the Court.

This appeal is from an order directing the sheriff to turn over the proceeds of sale of a 1962 Thunderbird motor car to one of the appellees. The facts are not in dispute. Carney was indebted to Piedmont on a note dated February 5, 1962, and judgment by confession was entered thereon on March 20, 1962. On March 26, 1962, Carney purchased the automobile in question subject to a conditional sales contract which was assigned to Universal C. I. T. Credit Corporation. On April 2, 1962, the Department of Motor Vehicles issued a title certificate on the car, listing thereon a lien in favor of C. I. T. On April 10, 1962, Piedmont obtained and had placed in the hands of the sheriff, a *fi.fa.* on its judgment, and the sheriff levied on April 12, 1962. The conditional sales contract was recorded on April 18, 1962. C. I. T. intervened on June 27, 1962, and claimed the proceeds of the sheriff's sale. The trial judge sustained C. I. T.'s claim.

C. I. T. contends that Piedmont had actual notice of the conditional sales contract prior to April 10, 1962, by information obtained through the Department of Motor Vehicles, and is therefore not entitled to any assistance from Article 21, Section 66, quoted below. We find nothing in the record to support the contention. The Department is not a record office hence it does not afford constructive notice. The petition filed by C. I. T. indicates, and the trial court stated in his opinion, that actual notice was not received by Piedmont until after the sheriff's levy. If C. I. T. relied upon actual notice it should have alleged and proved the same.

The appellant contends that since it acquired a lien prior to the recordation of the conditional sales contract, although subsequent to the delivery of possession of the automobile to the buyer, it should prevail. C. I. T. contends that since Piedmont was an antecedent creditor it is not entitled to preference on a lien acquired subsequent to the transfer of possession subject to the conditional sales contract. The answer depends upon the proper construction of Code (1957), Art. 21, Sec. 66, which reads in part:

"Every * * * contract for the sale of goods and chattels * * * wherein the title thereto * * * is reserved until the same be paid in whole or in part, or the transfer of title is made to depend upon any condition therein expressed and possession is to be delivered to the vendee, shall in respect to such reservation and condition, be void as to *subsequent purchasers, mortgagees, incumbrancers, landlords with liens, pledges [pledgees], receivers, and creditors who acquired without notice a lien by judicial proceedings on such goods and chattels,* * * * until such note, sale or contract be in writing, signed by the vendee and be recorded, as provided in this section * * *." (Italics added.)

It seems clear that Piedmont falls into the category of a creditor "who acquired without notice a lien by judicial proceedings" on the automobile, and the only controversy is whether the word "subsequent" modifies the word "creditors."

In determining this question, it will be helpful to outline the history of the statute, and to examine the prior decisions of this Court dealing with it and similarly worded statutes.[1] Section 66 was first enacted into law in 1916. It provided that conditional sales contracts, wherein possession was to be delivered to the vendee, would be void "as to third persons without notice" until in writing, signed by the vendee and recorded. During the period of time that the above quoted language remained in the statute (1916 to 1949), this Court and the Federal Courts had occasion to deal with and comment thereon. This Court defined the meaning of "third persons without notice." They were defined as purchasers, lienors and *subsequent* general creditors of the conditional vendee, *i.e.,* creditors who became such after the delivery of the property and before the recording of the contract. *Roberts & Co. v. Robinson,* 141 Md. 37, 118 A. 198; *Meyer Motor Car Co. v. First Nat. Bank,*

1. A comprehensive history of the statute is contained in the opinion of the Court in Tatelbaum v. Pantex Mfg. Corp. 204 Md. 360, 104 A. 2d 813.

154 Md. 77, 140 A. 34; *Gunby v. Motor Truck Corp.*, 156 Md. 19, 142 A. 596; *Enterprise Fuel Co. v. Jones*, 99 F. 2d 928; *In Re Shipley*, 24 F. 2d 991.

In *Stieff v. Wilson*, 151 Md. 597, 135 A. 407, this Court stated that the Act of 1916 "does not intend any departure from the well-known American theory and purpose of recording claim to title, that is, to protect persons who might *subsequently* deal with the property and part with value for it without notice of the earlier conveyance." (Emphasis added.) This statement was quoted with approval in 1954 (after the amendment of 1949, which will be mentioned shortly) in *Tatelbaum v. Pantex Mfg. Corp.*, 204 Md. 360, 104 A. 2d 813.

In *Gunby, supra,* a case before the amendment of 1949, the precise question presented here was decided to the effect that the Act of 1916 did not apply in favor of creditors whose claims arose out of transactions prior to the date of the delivery of property covered by a conditional sales contract, even though judgment was obtained thereon afterwards. In this case, the Court quoted from the earlier case of *Davis v. Harlow,* 130 Md. 165, 100 A. 102, as follows: " 'These sections [of the Code relating to the recording of mortgages] have been passed upon in a long line of decisions in this state and we must give them the force and effect they have long been held to be entitled to, that is, that they are for the protection of creditors becoming such *after the date of the mortgages,* either unrecorded or defectively executed [italics added].' " The Court then added: "We see no reason why the sections relating to conditional sales contracts should be differently construed in principle."

Thus, it is seen that prior to the amendment of 1949 the decisions of the Court of Appeals had made it plain that the purpose of the Act of 1916 was not to protect antecedent creditors of the conditional vendee, but to protect purchasers, *subsequent* lienors, and *subsequent* general creditors.

In 1949 and 1951, the Legislature amended Section 66. As pertinent here, the words "third persons without notice" were eliminated, and conditional sales contracts, under certain cir-

cumstances, were rendered void as to "subsequent purchasers, mortgagees, incumbrancers, landlords with liens, pledgees, receivers, and creditors who acquired without notice [the words "without notice" were inserted by the 1951 amendment] a lien by judicial proceedings on such goods and chattels." [2] It will be noted that we have the adjective "subsequent" followed by seven nouns. Our inquiry, as pointed out above, is whether "subsequent" modifies the word "creditors." Under all rules of construction, "subsequent" modifies the word "purchasers," the noun immediately following it. We have held that "subsequent" also modifies the words "mortgagees" and "incumbrancers" (the only others of the seven nouns so far passed upon), and, in so doing, we commented upon the objectives of the statute, after the 1949 amendment.

In *Mohr v. Sands,* 213 Md. 206, 131 A. 2d 732, Chief Judge Brune, for the Court said:

> "If we approach the matter from the point of view of the purpose of the recording statutes involved, we find that they serve primarily to give protection against the consequences of false or misleading appearances of ownership based upon the possession of the chattels. * * *. The requirements of Section 74 [now 66] of Article 21, that a conditional contract of sale * * * must be recorded at the place of residence of an individual vendee * * * emphasize the view that the statute is concerned primarily with appearances based upon the vendee's possession of the chattel * * *. Likewise, under Section 49 [now 48] *et seq.* of Article 21, it is the danger of appearances from the possession of the vendor or mortgagor, which continues despite a change of ownership or the creation of a lien, with which the statute is concerned."

---

2. Also in 1949, Section 41 of Article 21 (relating to chattel mortgages) was amended so as to read almost identically the same as Section 66. For a case involving that Section after the amendment, see Plaza Corp. v. Alban, 219 Md. 570, 151 A. 2d 170.

28

Again, in *Auto. Accep. Corp. v. Univer. Corp.*, 216 Md. 344, 139 A. 2d 683, we emphasized that the objective of the recording statute was to protect against secret liens upon personal property where persons had parted with value upon the misleading appearances created by possession in the conditional vendee. Chief Judge Brune, writing the majority opinion, quoted from the opinion in *Tatelbaum v. Nat'l Store Etc. Co.*, 196 Md. 599, 78 A. 2d 228, as follows: " ' * * * *the purpose of recording is to protect against secret liens created by retention of title after delivery of possession, * * *.'* " Judge Brune continued: "The secret lien which the recording statute invalidates as against subsequent 'incumbrancers' is not validated against them merely by being assigned * * *. * * *. *Per contra*, and under the explicit language of the recording statute, the reservation of title under the first contract of conditional sale is void as against *subsequent* [italics added] incumbrancers until recorded. The critical time under the rule * * * is the time of the delivery of the automobile * * *. * * *. Since the statute [Section 66] operates as a bar *only* in favor of *subsequent* [italics again added] incumbrancers, * * *." [3] Although there was a split in the Court in the above case, it was not concerning the purpose of the recording statute, Section 66, in protecting against secret liens, or the fact that the persons protected were those dealing with the property *after* delivery thereof, but before the recording of the contract of sale. The dissent quoted from *Mohr* as we did above. It also stated:

> "[T]he statute's [Section 66's] design is to protect *only* those of the classes of third persons expressly therein designated who may *subsequently* deal with the chattel sold in reliance on the possession of the buyer, * * *. In 1949 * * * the Maryland Legislature expressed the purpose mentioned in the *Roberts* case [supra] to protect only purchasers and lienors [it would seem that "receivers" should be here added]

---

3. Compare the above language with the dictum in Tatelbaum v. Nat'l Store Etc. Co., supra.

for it eliminated the words "third persons without notice" and in their place put [the words of the statute]. * * *. It seems clear that at least since 1949 Maryland agrees * * * that the purpose of [Section 66] * * * is to protect against nonrecorded contracts *only* those designated in the statute who may *subsequently* deal with the buyer as to the chattel in his possession * * *." (Emphasis added.)

In *Rupp, Trustee v. Johnston Co.,* 226 Md. 181, 172 A. 2d 875, we held that a trustee under a deed of trust, who advanced money subsequent to the delivery of certain chattels, was a "subsequent" incumbrancer, if not a "subsequent" mortgagee, and as such was protected by Section 66 against an unrecorded (or improperly recorded) conditional sales contract. Had the appellants in that case been antecedent incumbrancers, instead of "subsequent" ones, they could not have prevailed.

From the above, it is seen that this Court, both before and after 1949, has stated that the principal purpose of Section 66 is to protect against secret liens, which, at one time, were permitted. This was stated in the preamble to be the primary objective of Section 41, the first Maryland statute requiring the recordation of chattel mortgages, in 1729. Laws of 1729, Ch. 8, Sec. 5. Likewise, this Court has stated, both before and after 1949, that the persons protected by the Statute are those who deal with the property subsequent to its delivery and before the recording of conditional contract of sale. These statements of the Court of Appeals were, and are, correct, we think. We, therefore, reaffirm the statements, and hold that the word "subsequent" in the statute modifies the word "creditors." We agree with Judge Hammond's observation in the dissent in *Auto. Accep. Corp., supra,* to the effect that the result of the 1949 amendment was to substitute certain named subsequent lienors [and receivers] for subsequent general creditors. Compare *Plaza Corp. v. Alban,* 219 Md. 570, 151 A. 2d 170. This means, of course, that the trial court was correct in its ruling.

*Order affirmed, with costs.*

HENDERSON, J., filed the following dissenting opinion.

I do not agree with the construction placed upon Code (1957), Art. 21, sec. 66 by a majority of the Court, and think the matter of sufficient importance to state my reasons.

We held in *Auto. Accep. Corp. v. Univer. Corp.*, 216 Md. 344, 353, that the holder of a contract of conditional sale was an "incumbrancer" within the meaning of the statute, (see note 19 Md. L. Rev. 157, on this point) and assumed (p. 359) that the statute operates as a bar only in favor of "subsequent" incumbrancers. The dissent in that case was based on two contentions, that the statute was designed to protect only those who dealt with the chattel sold in reliance on the possession of the buyer, and that a conditional vendor is an owner, not a lienor. Both opinions cited with approval, *Tatelbaum v. Nat'l Store Etc. Co.*, 196 Md. 599. Chief Judge Brune, for the majority in the *Auto. Accep.* case (p. 356) quoted Judge Markell's statement in *Tatelbaum* as follows:

> "In most states recording laws effect a sort of race of diligence in which holders of instruments recorded late and purchasers and lien creditors rank in order of time of recording or acquiring a lien by judicial proceedings. In Maryland the recording laws early proceeded on a different principle, viz., of protecting purchasers and creditors 'who may trust such party after the date of the said deed' * * * or 'creditors who have become so before the recording of such deed or conveyance, and without notice of the existence thereof' * * *. By the Act of 1949 the conditional sale act of 1916 seems to have been so changed as to follow the plan of recording laws in other states and to depart from the peculiar principle of Maryland recording laws. Until 1949 the conditional sale act of 1916 followed the Maryland principle; 'third parties' included creditors who 'trusted' the conditional vendee after delivery of the chattels and before recording of the contract * * *."

Since Judge Markell was dealing with a case that arose under the law as it stood prior to 1949, although the decision was

handed down in January, 1951, his comment for the Court has been characterized as dictum, (see note 21 Md. L. Rev. 160, 163) but it is a clear and elaborate one, not lightly to be disregarded or ignored. Moreover, by Ch. 577 of the Acts of 1951, presumably with knowledge of this Court's decision and the interpretation placed upon the Act of 1949, the Legislature repealed and re-enacted sec. 66 without substantial change, except to insert the words "without notice" after the word "acquired." By established cannons of construction this was in effect an adoption of the gloss placed upon the statute by this Court.

Judge Hammond in his dissent in the *Auto. Accep.* case, (p. 361) said this: "Maryland passed its first recording act as to conditional sales agreements in 1916. Unless recorded, the seller's reservation of title was ineffective against 'third persons without notice.' Third persons were construed to mean all who trusted the conditional vendee after he had obtained possession, whose financial position would be worsened if the reservation of title was effective, including general creditors. * * * This statutory protection for all who actually or presumptively relied on the vendee's possession was far more liberal than the protection given by the Uniform Conditional Sales Act or the laws of most of the States. The Uniform Act protects 'any purchaser from or creditor of the buyer, who, without notice' * * * purchases the goods, or acquires a lien on them by attachment or levy. Generally only purchasers from, or judicial lien creditors of, the conditional vendee take precedence over the reserved title of the vendor under an unrecorded contract. In 1949 at the instance of the large credit companies who finance most of the conditional sales, the Maryland Legislature expressed the purpose * * * to protect only purchasers and lienors for it eliminated the words 'third persons without notice' and in their place put 'subsequent purchasers, mortgagees, incumbrancers, landlords with liens, pledgees, receivers, and creditors who acquired a lien by judicial proceedings on such goods and chattels * * *.' As Judge Markell said for the Court in the *National Store Fixture Sales* case * * *: 'By the Act of 1949 the conditional sale act of

1916 seems to have been so changed as to follow the plan of recording laws in other states and to depart from the peculiar principle of Maryland recording laws.' "

I take it that everyone was in agreement in the *Auto. Accep.* case that the Act of 1949 adopted the concept of a "race of diligence," although Judge Hammond went on to discuss the point of reliance on possession, there material. There can be little doubt that creditors who obtain a lien by attachment or execution without notice, are preferred under sec. 5 of the Uniform Conditional Sales Act, whether the debt is antecedent or subsequent. See 3 Jones, *Chattel Mortgages and Conditional Sales,* § 1434, and cases cited. The same result has been reached in other states under Acts similar to ours. See *Commercial Credit Corp. v. Smith,* 148 Atl. 756 (N. J.), *Miller v. Raile & Morrison,* 39 N. E. 2d 172 (Ohio) and *Baker v. Hull,* 166 N. E. 175 (N.Y.). The "race of diligence" concept seems to be implicit also in the Uniform Commercial Code (1958 text), secs. 9-301 and 9-312.

The Maryland cases since the *Auto. Accep.* case *(supra)* throw little light on the problem. In *Rupp, Trustee v. Johnston Co.,* 226 Md. 181, 187, we distinguished *Tatelbaum v. Pantex Mfg. Corp.,* 204 Md. 360, where it was held that because a "trustee", as distinguished from a "receiver", was not covered by the act, the act was not thereby rendered unconstitutional. In answer to a contention that the appellant was not a subsequent incumbrancer, we held in *Rupp* that he was, because it was shown that the advances had been made subsequent to the delivery of the chattels in question, and in reliance thereon. It was assumed that such a showing was necessary to allow recovery.

Aside from the apparent state of the authorities, however, I cannot agree with the Court's construction in the case at bar. Assuming that the word "subsequent" modified not only "purchasers" but also "mortgagees", and "incumbrancers", we run into difficulties when we reach the classes next specified. I take it that the phrase "landlords with liens" cannot fairly be limited to only those landlords who become landlords after the delivery of the chattel. Evidently what is meant is the com-

pletion of the lien by distraint. Cf. Code (1957), Art. 53, sec. 18, which prefers the holder of a recorded conditional sales agreement to a distraining landlord. "Pledgees" obtain a lien only by delivery of the particular chattel, so to speak of a "subsequent" pledgee is meaningless. A "receiver" represents all creditors, whether prior or subsequent to the delivery of the chattel in question. I find nothing in the words quoted to import a severance between the classes served by the receiver. To my mind, the crucial time delineated in the phrase "creditors who acquired without notice a lien by judicial proceedings on such goods and chattels," is the date of actual levy, which in the case at bar, preceded the recordation of the conditional sales contract by six days. For the reasons stated I would reverse the judgment.